Thank you, Your Honor. If it pleases the Court, it seems to me that the focus of the determination here is really on the District Court's actions in providing zero value for a few categories of claims. And I have read and I understand, I believe, the cases that indicate that a District Court is not always required to substitute his or her determinations and calculations in place of the calculations of the defendant that have been rejected. Well, how far does that go? So here, let me give you a hypothetical. And I excuse you in advance from saying those are not the facts of this case. Let's assume that the plaintiff has a $5 claim and he says there are 1,100 members or whatever number multiplied gets you to 5 million members of the class, 200 million members of the class. And it turns out there's only 100 million members of the class. But everybody agrees the claim is $5 and everybody agrees multiplied times the number of members of the class, it goes over the limit. Would we really say that the District Court lacks jurisdiction because the plaintiff gave the court the wrong number when it's clear that the right number gets you there? No, I think there would be jurisdiction there, Your Honor. Well, so now let me take that to this case because it seems to me when I read the District Court's order, the District Court says you made two fundamental errors, plaintiffs, in your calculations. You used the wrong minimum wage number. You used $16 rather than a lower number. And you assumed the pay periods were weekly as opposed to biweekly. But if you use the correct assumptions and the District Court uses the correct assumptions, we have a mountain controversy well in excess of 5 million, even absent attorneys' fees. Put those aside for a second. So, I mean, it's a little bit like I used Jeopardy before this morning. But you don't have to give – in Jeopardy, you've got to give exactly the correct answer. Here, if they give the correct information and one may look at the correct information and get to the correct answer, even if some of their assumptions are wrong, why shouldn't we find jurisdiction? We shouldn't. It's our position, Your Honor, that we should find jurisdiction. The distinction I was going to make with those cases that indicate the District Court does not have to provide a calculation. In our case, the order of Judge Klausner actually provided specific information from which you can determine that the aggregate amount in controversy is far in excess of 5 million. Perhaps the best example of that is the Trinidad Wage Claim, where he indicated that, as you indicated, Your Honor, in the hypothetical, or actually as to this case, that the amount of 1622 was used. And then the judge himself set forth the amounts that should have been used over a period of time. Yeah, not all questions are hostile. I guess I was trying to suggest what I think the argument is for your side of the case. Thank you. Thank you, Your Honor. I apologize for that. So, Counsel, where is the line between, I mean, we do, obviously, we don't want to put District Courts in the position of having to make your case for you. And I think you have the burden, but I get your point that it's not the high burden it normally is to remove a case, it seems like. So where is the line between where the District Court doesn't have to make, where the District Court, you know, we'd say, well, you didn't provide enough or you didn't provide anything to the District Court, and so the District Court doesn't have to make your case for you, so that claim gets zeroed out, right? Because, you know, I think an extreme case, let me ask you this, would you agree that if you provided nothing with regard to a claim, that it would be appropriate for the District Court to zero that claim out even though presumably that claim has some value, right? But it would still be appropriate for the District Court to zero it out because you just didn't provide anything, right? Yes, I think in some circumstances zeroing out would be appropriate. I think we don't have to even get that far to address Your Honor's question in the sense that here we've been provided everything by the judge himself. In the other cases that talk about Okay, okay. Yeah, so I just want to get to the next part. So that's one extreme, right? The other extreme is the District Court, I mean, maybe Judge Hurwitz has hypo-illustrated the other extreme where, you know, it's just one number's wrong, but everybody knows that, you know, it's some other number, right? Where is that, where's the line, though, where you provided enough, but the District Court, but maybe, you know, maybe the other side's done a good job of poking some holes in what you provided, but where do we as an appellate court, what kind of direction can we give to District Courts that, well, they may have poked some holes, but you still have to, you can't just zero out the claim. Well, I do have, my own personal view is that zeroing out the claim should never occur in a case where you have certainly sufficient enough and taking those allegations as well stated and when there's practice and continual process of violating the law, that you can make a reasonable determination that you're above the amount of controversy. We're beyond the complaint here. One question I have. It seemed that you admitted that the penalty amount would be in excess of $3 million, correct? Is that correct? Well, that's what we're asserting. So if we have a $3 million, there's $3 million basically without question on the minimum wage claim. Is that correct? Well, the court put a zero there. It's our, we put out there that it should be 3.7. If you excise out the interest, it's $3.1 million. So, yes, it's our position that $3.1 million based on the court's own determination that the minimum wage rate was too high, but in fact there is no other criticism of the fact that it is due. Right. Okay, so you don't have that penalty amount if the actual amount is zero. So you only get to that penalty if there's some value in the minimum wage amount. And so isn't that an inconsistency in the district court's reasoning to say, look, there's the penalty but not, but I'm still zeroing it out? That would be an inconsistency, wouldn't it? Yes, Your Honor, we agree. We're using the district court's own findings. And by the way, this is unlike many cases. This is not simply based on the complaint. You all filed declarations. It's in effect a summary judgment proceeding. A different standard. Yeah, different standards to be sure. Using the district court's own analysis, what do you think the amount in controversy is? Well, I certainly think it's, I think it's closer to $8 million or $7 million. We've used the lowest number that the court had indicated on the minimum wage claim at $10.50. And that's how we came to in excess of $3 million on that claim alone. The court itself. Well, the $3 million is just the penalties. Excuse me? The $3 million was just the penalties, and then you multiplied it by the $16, correct? Not multiplied it, but the $3 million was irrespective of what the amount is. That's just per, that's an amount regardless of the actual minimum wage amount. You get to that in penalties, and then there's an amount in controversy over and above that on the minimum wage claim. Or is that not right? My understanding is it's more than $3 million in the aggregate. The penalties are just a subset of the $3 million. Okay. So maybe it would be better if you just told us what the components of the amount in controversy are. There's obviously the $3 million, what we've been talking about now. Put aside attorney's fees for a moment. Tell me what the other components are that get you above $5. Okay. Thank you, Your Honor. Let me quickly infer my notes here. And I know it's in the record, but I think the problem is we're using different nomenclatures for claims, and I want to make sure I understand them. So as per Judge Klosner's order, $141,000 is plaintiff's overtime claim, and there's no dispute. But if I come over that, he did not zero that out. He counted that towards the aggregate value. He counted in $913,000 on the missed meal breaks. And, again, that's part of where he gets to the 2.1, I believe it is, in his own total. Another total is the missed breast breaks, and that total is $1,076,000. And then if we only then add in the $3 million from the minimum wage claims, we're above $5 million already. But as the Court may see on Pages 22 and 23 of our brief. Yeah, it's in your brief. Yeah. So it should be even higher than that, but it doesn't have to be. Was it a mistake to allege the $16 an hour seems to be the appropriate amount with respect to the overtime claim? Because then you use the average hourly rate. So was it just a mistake to argue in front of the district court the $16-some per hour in the minimum wage claim as well? It would appear so. I was not involved in that. But it should have been, as Judge Klausner said, it should have been lower for the minimum wage claims. $16.22 had no purpose or reason to be there, no justification. So now I've asked you several times to forget about attorney's fees. Could you now remember about attorney's fees and tell us where the district court erred with respect to attorney's fees in your view? Well, to be perfectly honest, I'm not sure that the district court erred in that regard. There is case law, obviously, in the Ninth Circuit, which indicates you do not just take a 25 percent figure and multiply that out. Well, is it enough to cite other cases in which 25 percent was awarded, or do you have to demonstrate that those cases were substantially similar in some way to your case? That's an excellent point, Your Honor. I think you probably have to demonstrate that they're substantially similar. I don't think 25 percent is unreasonable. I know there's been a district court or two that have suggested 15 percent can be applied very easily. I would say to the court that there should be something. When you have a case of this nature, you know there's going to be attorney's fees awarded. They're statutorily provided for. And to zero it out, I think, is fairly draconian. Well, that may be one of the areas where, to take our prior case, you were asking the district court to do your work, rather than coming in and saying, here's some previous wage in our cases and here's some standard awards. You just sort of said, well, 25 percent seems like a presumptive number, let's use it. Now, I don't know that you need it to get to your 5 million, but I'm trying to figure out what, if we're going to tell district courts and litigants what they ought to do, what do you think they ought to do to demonstrate the appropriate amount of attorney's fees? In a case that hasn't been litigated, so we don't know yet what all the other factors are. Well, as Your Honor points out, I think it's reasonable to expect there to be some comparison and some material provided so that the district court has a method and means and evidence upon which to rely. So, as you said, we don't need it here in this case to get to our 5 million. I think we were a bit deficient in what we presented, but I think if the court is trying to fashion a brighter line for future district courts, I think those district courts can arrive at the determination by looking at the aggregate amount of material that's being argued by the defendant and see if it's a reasonable conclusion that there should be that amount that's being sought added into the amount of controversy. You've got about a minute and a half left. I guess I'll try to reserve the rest unless you have any other questions. Good. I wanted to make sure I was watching the clock for you. Ms. Goldsmith. Thank you. Good morning. Let me start with what the court has mainly focused on here, which is what is the defendant's burden and what is the district court supposed to do when the defendant presents calculations that are legally impossible or are based on assumptions that are groundless, unknowable? Well, but let me ask you the same question I started your opponent with. Let's assume that there's an easily demonstrable mathematical error, but everybody knows that if you use the right multiplier, you would get to more than 5 million. So, again, use my class. They say there's 2 million people in the class and the claim is $5 per person, and it turns out it's easily demonstrable there's only a million and a half. Do we really say, like the gong show, bong, zero, you lose? Or do we say, look, you know, the judge had the tools in front of him, and he did make — see, and that's what troubles me in this case. What is your response to both of them? He didn't say, I'm not going to do your work for you. He says, I've done the work, and it appears to show more than 5 million, but I'm going to give you a zero because, you know, I'm grading your paper down. It just doesn't strike me as the way we ought to be doing business. So respond to that for me. Sure. So the first part of the response is it's not the hypothetical that Your Honor has presented. I know, but I give you the same dispensation that I gave to your opponent. It is a hypothetical. You needn't respond, tell me that that isn't this case, but go ahead. Right, but the reason, what's important is the reason that it is not this case, and the reason that it is not this case is because in this case, there's also the embedded question of what is the appropriate violation rate. So in Your Honor's hypothetical, it's we've got a $5 statutory penalty and 100 million people. But here we have a rate of pay where counsel has correctly conceded that the company was wrong, both in the notice of removal and in their opposition to the motion to revamp. They got it wrong twice. But we know what the right number is. We know what the minimum wage was in effect throughout the class period, but we don't know what the violation rate is. And you have to assume a violation rate to get to this calculation of what's the amount of controversy. So, counsel, I've thought about that, and I think I'm not sure that helps your case because I think what Judge Hurwitz is getting at that I think is disturbing all of us is, obviously, I don't even know that you're fighting on if there's an obvious right answer, but they got the number wrong, you know, minimum wage, right, but there's a publicly known that the judge maybe should just substitute in the right answer. But I'm not sure it helps you for the concern we've got if you say, yeah, but there was this other thing that was a lot more inherently ambiguous, which is it always is going to be in these cases that the violation rate, I mean, some of our case law talks about that. The violation rate, there's no magic number for that, right? Unlike minimum wage, whether it's 20 percent, whether it's 10 percent, 30 percent. And so if district court judges are allowed to just say, you know what, I don't agree with the number that you provided in your or that you assumed, and therefore zero out a claim, boy, it becomes really hard on defendants because let's say they pick 25 percent, but the district courts, nope, I'm more at the 22 percent mark. I mean, I think if we don't require the district courts to actually sub in the 22 percent number but allow them to zero out the claim, how are defendants ever going to pick that number, that inherently ambiguous number that the district court agrees with? Well, it is actually not that hard for defendants under CAFA to meet their burden. And the reason for that is that CAFA does not include a one-year limitation on removal and as the case begins to be fleshed out in state court and a defendant obtains information that is relevant to calculating the amount of controversy and in determining these violation rates, the defendant can then remove based on that real information rather than on simply plucking numbers out of the air and saying, I have assumed that 25 percent is a conservative violation rate. Do you think it's not? Do you think it's not? In other words, I understand you're in a strange position here. You didn't ask to be put in this position. You filed a complaint in state court. I kind of think CAFA is a goofy statute, but Congress gets the right to pass goofy statutes and they remove it. And your goal, I take it in this lawsuit, is to get as much recovery as you can on behalf of your clients, but you're unwilling to cap that recovery at $4.9999 million, correct? Even if we were the Supreme Court and standard of hiring, Noel said that that doesn't work. Well, but you're not. And you really don't make a plausible argument that the amount in controversy is less than 5. You don't argue a different violation rate or suggest. What you're really saying is they didn't do a good enough job in demonstrating that it's more than 5. Is that a fair summary? Correct. And the statute requires them to show the non-controversy guidance on the evidence. So the issue you point out is violation rate because many of the other numbers are just inherent. What are they supposed to do on violation rate? Their position is, I take it at least at this stage of the litigation, we didn't violate the statute at all. We think what we did was fine. It's your burden to prove the violations. So how does the defendant in removing, how do they choose a violation rate? What do they do? It's a variant of Judge Van Dyke's question. Everybody's got the opposite incentives here. You want the violation rate to be 100 when you go to trial. They want it to be zero. And now you're criticizing them for choosing 25 percent as an assumption. How do we evaluate that? That's what I'm saying. So this court in Ybarra said that you can't assume 100 percent violation rate from a pattern practice complaint like this one. Plaintiffs in state court in California only have to plead ultimate facts. They don't have to plead evidentiary facts. The defendant has unlimited time on their path to remove. So if developments in the state court, for example, the deposition of the violation rate, that's, you can't remove that. See, my problem is that a mountain controversy, whether in the CAFA context or in the straight Federal jurisdiction context when the case is originally brought, doesn't require the defendant to say, I'm guilty. I did everything the other side says I did. The defendant is perfectly able to have a case, to file a case in Federal, plaintiffs are perfectly able to file a case in Federal court without the defendant admitting fault. And on removal, the defendant, I think, is perfectly capable of removing without saying, and, Your Honor, we admit that we've screwed over 25 percent of the class. So I ask again, you know, it can't be that no case is removable until discovery is done because it will still be that they'll deny the claim. So how do we deal with that portion of the analysis? So there has to be some reason for the defendant's assumed violation rates. But isn't this a quite conservative rate? If we were arguing for liability at trial and they said, well, you know, we think it only occurred 25 percent of the time, my guess is you'd cut them to pieces and you'd say, oh, come on. There's no basis looking at the allegations in this complaint for saying once a week or once every two weeks or once every four weeks. I mean, you can have a pattern of practice that affects every person over a four-year period that doesn't happen once a week. Counsel, hasn't this already been a, as I thought, I thought we already had a case in the circuit where we, where the, maybe I'm misremembering, but where the district court judge had not liked the violation rate and we said, it's close enough. Isn't there a case like that? I'm not familiar with the published decision that says that, Your Honor. Maybe it was not published. The principal decision on point is the Ibarra case, which says that 100 percent violation rate cannot be assumed from a pattern of practice complaint. And that makes perfect sense. So the question is, how do we deal with their assertion of 25 percent? Do we say prove it? Because we can't ask them really to prove that they violated the law 25 percent of the time. They want to prove they never did. So how do we deal with that? It seems like a conservative number to me. That's why I keep coming back to this is simply to say that it is a conservative number does not make it so. And so there has to be something, whether it's in the allegations of the complaint or in defendant's business records or in further development of the case in state court, which CACA specifically facilitates by not having a deadline on the rule that a court can, that a defendant can then present evidence that would show by a preponderance of the evidence that more than $5 million is at issue. I would like to turn to Judge Harrison. Go ahead. And then I have another question having to do with whether it's clear to you what standard the district court was using. At some point it seems that the court was holding the defendant to a little bit of a higher standard than is now applicable, and yet other cases, it also cites cases that have the appropriate standard. So when you get done with what you're about to say, I'm curious if you're clear on what standard was used by the court. Right. So first I wanted to turn to the question that Your Honor was posing to Mr. Zeman about the $3 million in minimum wage damages because there are several things that were wrong with that $3 million regardless of what the court might conclude about the amount of controversy on the substantive minimum wage claim. The first is that the statute of limitations under California, in the California Labor Code for civil penalties, like the civil penalty in Section 1197.1 is a one-year statute of limitations, which does not get extended by the unfair competition claim. Defendant's calculation of threesome million dollars was based on a four-year statute of limitations, not a one-year statute of limitations. And then the second thing that is wrong with that calculation is that it rested on this assumption of even to get to a one-year, you would have to figure out how many class members, how many pay periods are at issue for that one year. And we showed in our brief why calculations of a one-year number of pay periods and class members made no sense. And the district court pointed out in two different places in its opinion that that number made no sense. So I don't think that the court can add that $3 million. I think that would be legal error, particularly on the statute of limitations. Let me ask you to address this sort of backwards. Let's assume that the district court, using the calculations that it did, came up with a number of amount in controversy, in excess of $8 million without dealing with attorney's fees. And let's assume that those had been the numbers, they'd used the numbers that the other side gave them. Would there be any error in the district court's determination? If the district court had added in, I'm sorry, I couldn't follow. No. Let's assume the district court had, let's assume the other side had gone up with the correct minimum wage number and with the correct hourly, you know, wage frequency, biweekly rather than weekly. They'd given all the same numbers they gave to the district court. The district court used them and said, yes, adding everything up, it's over $8 million. Would we find that determination to be erroneous? I don't think actually that the math works out that Your Honor is positing there. Even if the minimum wage calculation on the substantive violation were included, that wouldn't get this defendant over $5 million. Well, that's where I'm having trouble because when I look at the stuff that's not contested, the district court says, well, I find two or three things that are not contested. And then it does the calculations on the rest and it says, gee, this calculation that you've submitted me, Roadrunner, is wrong because you used the wrong minimum wage or the wrong frequency of payment. But it seems to me clear if you substitute the correct minimum wage or frequency of payment, the district court has in effect found that the number is more than $8 million. So I'm not sure that my hypothetical on this case is real, on this instance is really far off. Assuming now, back to hypothetical, that's what the district court did, would that be an error? I think if the district court had applied a minimum wage number to the number of class members, it still would have had to assume a violation rate. Right, right. Right. So it comes down in your view really to the violation rate, does it not? Because all the other numbers are easily ascertainable. Indeed, the district court told us what they were. I mean, it said the minimum wage is not $16, it was really $10 for most, you know. So it really comes down in your viewpoint to the district court assuming a violation rate of 25%. Right? For the minimum wage calculation, yes. Yes, I think it would. And the district court doesn't have any basis to assume that. The defendant didn't give the court any good reason to accept the accuracy of that rate. And even if this court were to make that assumption, I would encourage you to take a close look at the math because I don't think it will add up to taking the defendant over $5 million. Well, I was going to say even if it didn't get to 8, it would get to 6. We've all been doing the math all week. That's why I'm asking the question. And I would, again, and I think you need to take a close look at those minimum wage penalties because there's absolutely no basis for a $3 million minimum wage penalty here. But to come back, if I may, to just come back to... Yeah, you've gone over, but why don't you, one more thought. All right. Judge Erickson had asked me what standard was the district court using and was it holding defendant to an inappropriately high standard. And the district court was simply holding defendant to its burden of proof to support its calculations and its assumptions by a preponderance of the evidence. And to find that the district court made any error here at all, I don't think there's any basis for that. And anyway, I thank you for your time. Thank you for your argument. And you've got a minute 30 left on the clock, counsel. Your Honor, unless the court has further questions, we will submit and thank the court for the time it invested in this case. No, I think we don't have any more questions. I thank both counsel for their briefing and arguments. And this case will be submitted. And we will be in recess. Thank you. All rise.
judges: HURWITZ, VANDYKE, Ericksen